# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLENE M. WILHITE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-04-952-F |
| SAFELITE GLASS CORPORATION, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Now before the Court is a Motion for Summary Judgment filed by Defendant Safelite Glass Corporation ("Safelite Glass") (doc. no. 21). Plaintiff Charlene M. Wilhite ("Wilhite") filed a response to which Safelite Glass filed a reply; accordingly, the matter is ripe for disposition. The Court, upon full consideration of the litigants' submissions and the applicable law, now **GRANTS IN PART** and **DENIES IN PART** Safelite Glass' Motion for Summary Judgment.

### BACKGROUND

Wilhite commenced the instant action under both diversity of citizenship and federal question jurisdiction and brings three claims against Safelite Glass under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq ("Title VII"): gender discrimination, sexual harassment-hostile work environment, and retaliation. Safelite Glass moves the Court for summary judgment on all of Wilhite's claims. The following relevant facts are taken from the summary judgment record and are either undisputed or viewed in a light most favorable to Wilhite.

Safelite Glass, an automotive glass repair and replacement company, employed Wilhite, a female, from July 16, 1999 until October 7, 2003. From August of 2001

until October 7, 2003, Wilhite worked as a customer service representative ("CSR"). Her duties as a CSR included answering the phone, preparing work orders, communicating with technicians, filing, and other general customer service duties.

In January 2003, Wilhite moved to Safelite Glass' main Oklahoma City facility and began working with three other female CSRs, Michelle Sohrabi ("Sohrabi"), Angie Plett ("Plett") and Crystal Brock ("Brock"). Wilhite served as lead CSR. At all times relevant to this action, Mike Eustice ("Eustice") served as Wilhite's immediate supervisor.

In March 2003, Wilhite complained to Eustice that two male technicians, who repaired glass for the company, were using foul language directed against Brock, including calling Brock a "hoe." According to Wilhite, these same technicians would frequently use the terms "bitch," "hoe" and "slut" in the office around Wilhite and the other CSRs. In May 2003, Wilhite again complained to Eustice about the technicians' use of foul language. In July 2003, Wilhite complained to Joe Cranmer ("Cranmer"), general manager of the Safelite Glass facility, about the problem.

Plett also used foul language, such as "motherfucker", "bitch", "hoe", and "whore", at work, including when talking to Eustice. Wilhite complained to Eustice on several occasions in June or July of 2003, about such language being used at work. Eustice stated that it was a little nasty and that he should control it.

In July 2003, Plett and Brock asked Wilhite if she sucked her husband's private area and then offered to bring a video to educate Wilhite. Wilhite complained to Eustice and he said he would take care of it. Plett and Brock never asked Wilhite questions along this line again.

On July 8, 2003, a Beaver Express delivery man, discovering it was Wilhite's birthday, asked Wilhite her age. After Wilhite told the delivery man her age was 37, he stated "Boy, I thought you were 12 because you're shaped like my 12 year old."

When Wilhite asked the delivery man "what is that supposed to mean," he answered "[y]our boobs, dummy." Wilhite complained about the incident to Eustice. The delivery man made subsequent deliveries to the company but did not make any other improper comments to Wilhite.

In July or August of 2003, Plett attempted on a couple of occasions to shove Playboy magazines into Wilhite's face for her to view. Wilhite did not look at the magazines.

Plett and Brock continuously talked about their sex lives in the workplace. Wilhite complained to Eustice and he said that he would take care of it; however, the problem continued so Wilhite, along with Sohrabi, went to Cranmer to complain in August of 2003. In August 2003, Plett accessed a picture on the Internet on Eustice's computer from a website called "rotten.com." The picture was sexual in nature and seemed to be an infection on a person's body. Wilhite looked at the picture and immediately turned away. Brock, Eustice, Sohrabi, and Chad Stein ("Stein"), another Safelite Glass manager, were present when this occurred.

In either August or September of 2003, Plett accessed a picture on the management computer of an uncircumcised penis. Plett had first accessed an article and asked Wilhite, "Have you ever seen an uncircumcised penis?" After Plett pulled the picture up onto the screen, Wilhite saw the picture and walked off. Brock, Eustice, Sohrabi and Stein were present when this occurred. After viewing the picture on the Internet, Plett asked Wilhite if her husband was circumcised. Wilhite did not know what circumcision meant so she asked Sohrabi.

In September 2003, Plett tried to show Wilhite a picture of a man and woman she had on her cell phone. Wilhite did not see the picture and Plett did not say anything else regarding the picture. Wilhite complained to Eustice about this incident the same day. Thereafter, Plett did not show Wilhite any more pictures from her cell

phone. She however continued to show the pictures to other employees in the workplace.

On Wednesday, October 1, 2003, Wilhite, Sohrabi, Brock, Plett and Christina Migdalski, a wife of a Safelite Glass employee, went to Club Rodeo for Sohrabi's birthday. The club had male strippers performing that night. During work on Friday, October 3, 2003, Plett and Brock threatened Wilhite that they were going to tell Wilhite's husband how Wilhite had been all over a "black guy" at Club Rodeo. Plett and Brock also called Wilhite names because they blamed her for Christina Migdalski's husband believing that Brock gave out Migdalski's cell phone number to a male patron at Club Rodeo.

Thereafter, Wilhite went to Eustice and asked him to stop the harassment and that she could not take it any more. She told him that if he did not put a stop to it, she would be forced to quit. Cranmer was present at the time. Later that same day, Cranmer told Wilhite that "if you feel that way and you want to quit . . . you feel that . . . this can't be resolved, I need it in writing." Wilhite did not answer; Cranmer walked off from her.

After taking off Monday, October 6, 2003, Wilhite returned to work on Tuesday, October 7, 2003. Eustice walked up to Wilhite and said "I need your two weeks in writing." Wilhite responded, "I'm not going to give you that." Eustice walked off. Wilhite went outside the office to smoke a cigarette. Thereafter, Eustice came to Wilhite and said, "[y]ou need to gather your things and leave."

When Wilhite reached her home, she called Cranmer on his cell phone and asked him "what's going on?" Cranmer told Wilhite, "[a]ll I can tell you, Charlene, is we're giving you two weeks in pay . . . That's plenty enough time for you to find another job." Shortly after Wilhite's termination, Wilhite's common law husband, who was also an employee of Safelite Glass, inquired of Eustice as to why Wilhite had

been terminated. Eustice told the husband that Wilhite was a troublemaker, was causing problems, and had resigned from her position. Subsequently, the husband also talked with Cranmer on the telephone about Wilhite's termination. Cranmer told the husband that Wilhite had resigned, that his hands were tied, and that he had left it up to Eustice.

Cranmer knew from past experience and past history that Safelite Glass' corporate offices were going to ask him to eliminate one of the four CSR positions at the Oklahoma City facility. The week after Wilhite's termination, Cranmer received a verbal mandate from Safelite Glass' corporate offices to eliminate one of the four CSR positions at the Oklahoma City facility. Following Wilhite's termination, Safelite Glass has never replaced Wilhite with another CSR.

Wilhite was never told that she was terminated due to a reduction of force. After October 1, 2003, there were no other hourly employees besides Wilhite terminated at Safelite Glass' Oklahoma City facility.

## STANDARD OF REVIEW

Summary judgment is proper only if Safelite Glass, as the moving party, shows "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The Court's function, at the summary judgment stage, is not to weigh the evidence but to determine whether there is a genuine issue for trial. Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994). "An issue is 'genuine' if, [viewing the full record] there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The mere existence of a scintilla of evidence in support of [Wilhite]'s position is insufficient to create a dispute of fact that is 'genuine'...." Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). Safelite

Glass, as the party not bearing the burden of persuasion at trial, need not negate Wilhite's claims, but may point out to the Court her lack of evidence on an essential element of a claim. Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000). The Plaintiff will avoid summary judgment only by going beyond the pleadings and presenting evidence sufficient to establish the existence, as a triable issue, of an essential and contested element of the case. Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." See Adler, 144 F.3d at 670 (citing Anderson, 477 U.S. at 248). When deciding whether summary judgment is appropriate, the Court views the evidence in the light most favorable to Wilhite, the nonmoving party, and draws all reasonable inferences in her favor. See Anderson, 477 U.S. at 255; Simms v. Oklahoma ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999).

## DISCUSSION [1] [2]

### I.   Wilhite's Gender Discrimination Claim.

Wilhite contends that Safelite Glass discriminated against her on the basis of her gender by terminating her employment in October 2003. Wilhite does not offer direct evidence of discrimination, thus her gender discrimination claim is to be analyzed under the familiar three-step burden-shifting model articulated by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991).

---

[1] Safelite Glass assumes, for the purpose of addressing Wilhite's gender discrimination, hostile work environment, and retaliation claims, that it terminated her. Safelite Glass maintains that Wilhite voluntarily resigned from her employment. (Def.'s Mot. Summ. J., Dkt. No. 21, at 10 n.1.)

[2] Safelite Glass also argues in its motion that Wilhite cannot establish a claim for constructive discharge. Safelite Glass' argument is moot as Wilhite states that the instant action does not involve a constructive discharge claim. (Pl.'s Resp., Dkt. No. 24, at 5 ¶ 5.)

Under the McDonnell Douglas analytical model, Wilhite must first demonstrate a prima facie case of gender discrimination by a preponderance of the evidence. Id. at 802. Establishing a prima facie case is not an onerous task and its elements are neither rigid nor mechanical; it is a flexible standard able to accommodate differing factual scenarios and allegations of discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981); McDonnell Douglas, 411 U.S. at 802 n.13; Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1139 (10th Cir. 2000).

If Wilhite succeeds in establishing a prima facie case, the burden of production shifts to Safelite Glass to articulate a facially nondiscriminatory and legitimate reason for the alleged discriminatory acts against her. McDonnell Douglas, 411 U.S. at 802. If Safelite Glass shoulders the burden, Wilhite must then demonstrate by a preponderance of the evidence that Safelite Glass' proffered legitimate reason is pretextual, that is, either false or contrived. Id. at 803. Even though the intermediate burdens shift between the litigants, the ultimate burden of persuasion always remains with Wilhite to put forth evidence demonstrating that Safelite Glass engaged in prohibited discriminatory conduct. Texas Dep't of Cmty. Affairs, 450 U.S. at 253.

Wilhite contends that to establish a prima facie case of gender-based illegal discharge she must show (1) that she is a member of a protected class; (2) that Safelite Glass subjected her to an adverse employment action; (3) that she was qualified for the job or doing satisfactory work; and, (4) that she was treated less favorably than a person not in the protected class or some other evidence that she was discriminated against. Safelite Glass agrees with the first three elements but contends that the fourth element should be that Wilhite's job was not eliminated after her discharge. That Safelite Glass did eliminate one of the CSR positions does not necessarily negate Wilhite's claim that her termination was motivated by discrimination. Plotke v. White, 405 F.3d 1092, 1100 (10th Cir. 2005). She may prove the fourth element by

establishing that she was treated less favorably than similarly situated male employees or that her termination occurred under circumstances giving rise to the inference of discrimination. Id. Accordingly, the Court agrees with Wilhite's construction of the fourth element. See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1166-1168 (10th Cir. 1998).

The court's analysis of whether plaintiff's termination occurred under circumstances giving rise to the inference of discrimination may be collapsed into a single statement: Regardless of whether a reduction on force was contemplated or was indeed inevitable, Safelite has not clearly negated the inference – which the court finds to be a permissible inference based on the events leading to the termination of Wilhite's employment – that her gender was at least a factor (i.e. that it made a difference) in Safelite's decision to terminate her.

The plaintiff may have been terminated simply because she was a troublemaker – without regard to her gender. However, the record discloses a permissible inference that Wilhite's gender made a difference in Safelite's decision to terminate her. These matters will be for the jury to determine. Accordingly, the court concludes that summary judgment is not appropriate on Wilhite's gender-based discharge claim.

**II.     Wilhite's Sexual Harassment–Hostile Work Environment Claim.**

Wilhite also alleges that Safelite Glass subjected her to sexual discrimination based on a hostile work environment. To establish such a Title VII claim, Wilhite must show (1) that she belongs to a protected group; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that due to the harassment's severity or pervasiveness, the harassment affected a term, condition, or privilege of employment; and (5) that her employer knew or should have known of the harassment and failed to take proper remedial action. Witt v. Roadway Express, 136 F.3d 1424, 1432 (10th Cir. 1998). Safelite Glass proffers three

arguments in favor of dismissal: that the alleged acts of same-sex sexual harassment were not based upon Wilhite's sex; that the alleged acts of harassment are neither severe nor pervasive enough to be actionable; and, that Wilhite engaged in a social relationship with the alleged harassers and such relationship weighs against a finding that Wilhite perceived her work environment to be hostile or abusive.[3]

In her response, Wilhite contends that she is not basing her claim only upon the actions of her female co-workers, but also upon the continuous sexual remarks made by the male technicians to the other CSRs and the behavior of the male managers, i.e., Eustice and Stein, being present and condoning sexual remarks being made and the Internet being used to access alleged pornographic and obscene material. Wilhite also contends that she has presented sufficient evidence to create a genuine issue of fact as to whether her co-worker's behavior was so severe and pervasive as to alter the terms and conditions of her employment as well as whether Safelite Glass knew or should have known of the harassment.

Wilhite relies upon the following incidents to support her claim of a hostile work environment: Plett and Brock asked her whether she sucked her husband's private area and wanted to bring her a video to educate her; Plett attempted to show her a photo of a "man and woman" that was on Plett's cell phone; Plett shoved a Playboy magazine in front of her on a couple of occasions, but she did not view them; she overheard certain male technicians calling other female CSRs "hoe", "bitch", and "slut"; Plett and Brock used company computers to access websites with sexual content such as a picture of an uncircumcised penis and another from "rotten.com" while in the presence of Safelite Glass managers; Plett asked her if her husband was

---

[3] The Court finds Safelite Glass' first argument pertaining to same-sex harassment dispositive of the same-sex harassment portion of Wilhite's claim; therefore, there is no need to address the second and third arguments.

circumcised; Plett used foul language, such as "motherfucker", "bitch", "hoe", and "whore", at work, including when talking to Eustice; she overheard Plett and Brock discussing their sex lives several times at work; and Plett and Brock calling her names.[4] [5]

Safelite Glass first argues that Wilhite's claim must fail as she cannot prove alleged acts of same-sex sexual harassment were based upon Wilhite's sex. Safelite Glass' argument is correct as it pertains to the actions taken by Plett and Brock; however, its argument is overly narrow as it fails to address the incidents involving the male technicians or the behavior of the male managers. Therefore, the Court will analyze the incidents complained of according to the identities of the alleged harassers.

  A. <u>The Behavior of the Male Technicians, Brad and Chris.</u>

Wilhite alleges that she was subject to a hostile work environment because she overheard male technicians, Brad and Chris, repeatedly calling other female CSRs "hoe", "bitch", and "slut". In its reply brief, Safelite Glass argues that Wilhite failed to list the actions of Brad and Chris during her deposition; therefore, her affidavit listing the actions of Brad and Chris contradicts her earlier testimony and should be ignored as an attempt to create a sham fact issue. Alternatively, Safelite Glass argues that the actions of Brad and Chris do not constitute sexual harassment as the comments of Brad and Chris were not directed toward Wilhite. Neither argument is availing.

---

[4] Wilhite does not disclose to the Court the names she claims she was called.

[5] Wilhite included an incident involving the Beaver Express delivery man, a non-Safelite Glass employee. The Court does not address this incident as Wilhite specifically limits her claim to co-worker harassment (Pl.'s Resp., at 6, ¶ 6; Def.'s Mot. Summ. J., Ex. 5).

A contradiction between Wilhite's deposition testimony and her subsequent affidavit, in and of itself, is not sufficient to bar such testimony. Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 973 (10th Cir. 2001). In her affidavit, she adds an additional event which she believes to constitute sexual harassment but which she did not list during her deposition; however, the newly disclosed event does not contradict prior deposition testimony pertaining to other events Wilhite discussed during the deposition. See e.g. Franks v. Nimmo, 790 F.2d 1230, 1237 (10th Cir. 1986) (discussing plaintiff's testimony wherein he stated that a certain event did not occur and his subsequent affidavit wherein he stated it did occur). Therefore, the Court finds that Wilhite's affidavit does not create a sham fact issue.

As for Safelite's second argument, the use of gender-specific words such as "hoe", "bitch", and "slut" are more than mere vulgarities and are sufficient to maintain a sexual harassment–hostile work environment claim. See Winsor v. Hinckley Dodge, Inc., 79 F.3d 996, 1000 (10th Cir. 1996) (listing cases). That Brad and Chris repeatedly directed such words toward other CSRs but within earshot of Wilhite does not necessarily negate her claim. The Court may consider any gender-based harassment when determining the existence of a hostile work environment, including incidents of sexual harassment directed toward Wilhite's co-workers. Hicks v. Gates Rubber Co., 833 F.2d 1406, 1413, 1415-16 (10th Cir. 1987); see also Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1385 (10th Cir. 1991) (stating in dicta that "[in Hicks, w]e held that even a woman who was never herself the object of sexual harassment might have a Title VII claim if she were forced to work in an atmosphere where such harassment was pervasive."). Accordingly, the Court finds that summary judgment on Wilhite's sexual harassment–hostile work environment claim is inappropriate as it pertains to the behavior of male technicians Brad and Chris.

B.   The Behavior of the Male Managers, Eustice and Stein.

Wilhite next alleges that managers Eustice and Stein subjected her to a hostile work environment by their condoning of the use of sexual remarks toward the CSRs, that is, by failing to correct the male technicians' use of sexual remarks, and by allowing the internet to be used to access what Wilhite considers to be pornographic and obscene material. In its reply brief, Safelite Glass proffers the same two arguments as before—that Wilhite is attempting to create a sham fact issue, and that the actions of managers Eustice and Stein do not amount to sexual harassment.

Safelite Glass' shame fact argument fails for the same reason discussed above. Its second argument, however, has merit. Sexual harassment is only actionable if it is because of Wilhite's sex, that is, because of her gender. Dick v. Phone Directories Co., 397 F.3d 1256, 1263 (10th Cir. 2005); Sandoval v. City of Boulder, Colorado, 388 F.3d 1312, 1327 (10th Cir. 2004). In her response, Wilhite makes the statement that her claim is based in part upon the actions of Eustice and Stein but does not elaborate further. Consequently, she fails to present any evidence from which a reasonable inference can be made that the actions of Eustice and Stein were due to her gender. The manager's actions clearly attend to the fifth element of Wilhite's claim, that her employer knew or should have known of the harassment and failed to take proper remedial action. However, they do not, in and of themselves, constitute sexual harassment. It is too great an inferential leap to impute the motive of the employees whose acts Eustice and Stein condoned to Eustice and Stein themselves. Chavez v. New Mexico, 397 F.3d 826, 837 (10th Cir. 2005). Accordingly, the Court finds that summary judgment is appropriate on Wilhite's sexual harassment–hostile work environment claim as it pertains to the incidents involving managers Eustice and Stein.

C.     The Behavior of the Female Co-workers, Plett and Brock.

Lastly, Wilhite alleges that Plett and Brock subjected her to sexual harassment in multiple ways: that Plett and Brock asked her if she sucked her husband's private area; that Plett and Brock used company computers to access websites with sexual content; that Plett attempted to show a "man and woman" photo from Plett's cell phone; that Plett shoved Playboy magazines in front of her; that Plett asked her if her husband was circumcised; that Plett used foul language at work, including when talking to Eustice, virtually identical to what the male technicians used; that Plett and Brock discussed their sex lives several times at work; and that Plett and Brock called her names. For the incidents involving Plett and Brock, the Court finds that the harassment conducted by Wilhite's female co-workers does not rise to the level of actionable sexual harassment as Wilhite fails to demonstrate how these incidents were due to her gender. Sandoval, 388 F.3d at 1327. Wilhite has not proffered any evidence that either Plett's or Brock's actions were motivated by sexual desire; that their actions were motivated by hostility to the presence of other women in the workplace; that they treated males and females differently; or that they acted to punish Wilhite for failing to comply with a specific gender stereotype. Medina v. Income Support Div., 413 F.3d 1131, 1134-35 (10th Cir. 2005) (discussing the four possible evidentiary routes capable of demonstrating that a plaintiff was discriminated against because of her sex in a same-sex harassment suit). Plett and Brock clearly engaged in conduct both outright sexual as well as tinged with offensive sexual connotations. But "[i]f the nature of [Wilhite]'s environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment." Stahl v. Sun Microsystems, Inc., 19 F.3d 533, 538 (10th Cir. 1994). Accordingly, the Court finds that summary judgment is appropriate on Wilhite's

sexual harassment–hostile work environment claim as it pertains to the incidents involving Plett and Brock.

### III. Wilhite's Retaliation Claim.

Wilhite alleges that Safelite Glass retaliated against her by terminating her in October 2003 for complaining about sexual harassment. Wilhite's reliance upon indirect evidence in support of her retaliation claim mandates the application of the McDonnell Douglas test.

To establish a prima facie case of retaliation, Williams must show (1) that she engaged in protected opposition to discrimination; (2) that Safelite Glass subjected her to an adverse employment action; and, (3) that a causal connection exists between Safelite Glass' adverse action and the protected activity. Mattioda v. White, 323 F.3d 1288, 1293 (10th Cir. 2003). Safelite Glass contends that it is entitled to summary judgment on the retaliation claim for three distinct reasons: that Wilhite cannot show that the conduct of which she complained constituted actionable sexual harassment; that she lacks a causal connection between her termination and her complaints of sexual harassment; and that she cannot show Safety Glass' articulated, non-retaliatory reason for her termination was a pretext for discrimination.

    A.    The Prima Facie Case.

From the evidence presented, Wilhite demonstrates a prima facie case of retaliation. First, in October 2003, Wilhite engaged in protected opposition to discrimination by informally complaining to Eustice, in the presence of Cranmer, that the harassment must stop. Medina v. Income Support Div., New Mexico, 413 F.3d 1131, 1135-36 (10th Cir. 2005). Safelite Glass argues that no one could reasonably believe the incidents of which Wilhite complained constituted sexual harassment. In light of the alleged incidents discussed above, Safelite Glass' argument fails as Wilhite did have a reasonable, good faith belief that the conduct complained of

violated Title VII. <u>Crumpacker v. Kansas Dept. of Human Res.</u>, 338 F.3d 1163, 1172 (10th Cir. 2003); <u>Love v. RE/MAX of Am.</u>, 738 F.2d 383, 385 (10th Cir. 1984).

Second, Wilhite testified that Safelite Glass terminated her in October 2003. Discharge from employment constitutes an adverse employment action; therefore, she has met the second element of a prima facie case of retaliation. <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 744 (1998).

Third, Wilhite proffers evidence of a causal connection between her engagement in protected activity and the adverse employment action in that Safelite Glass terminated her within one week of her complaining of harassment to Eustice. Although Safelite Glass argues no causal connection exists, the one-week temporal proximity between Wilhite's informal complaint and her subsequent termination suffices to demonstrate the causal connection necessary for a prima facie case. <u>Annett v. Univ. of Kansas</u>, 371 F.3d 1233, 1239-40 (10th Cir. 2004).

B.   <u>The Facially Nondiscriminatory Reason for the Action Taken.</u>

As Wilhite succeeds in establishing a prima facie case, the burden of production shifts to Safelite Glass to articulate a facially non-discriminatory and legitimate reason for allegedly terminating her. <u>McDonnell Douglas</u>, 411 U.S. at 802. Safelite Glass states that Cranmer knew, due to his personal experience and history as a general manager, that a reduction in force of one of the CSR positions was imminent, thus Wilhite was chosen to be discharged. On its face, the Court finds that Safelite Glass' explanation is a facially nondiscriminatory and legitimate reason; accordingly, the burden shifts to Wilhite to prove pretext.

C.   <u>Pretext.</u>

In her response, Wilhite argues that Safelite Glass' explanation is pretextual as Cranmer did not receive the directive from Safelite Glass' corporate headquarters for the reduction in force until one week following Wilhite's last day. In addition,

Wilhite argues that as the lead CSR she would not have been chosen for termination if Safelite Glass had actually followed the factors outlined in its Associates' Handbook for a reduction in force. Based upon Wilhite's first argument, the Court finds that Wilhite has shown Safelite Glass' explanation to be pretextual. First, even with Cranmer's history and experience, his explanation that he could foretell a coming reduction in force is, at best, implausible. Second, Safelite Glass' reliance upon a corporate reduction in force directive issued one week after Wilhite's termination is suspicious since Safelite Glass only eliminated one position. See Plotke, 405 F.3d at 1100 n.9.

For the above reasons, the Court finds that Wilhite demonstrated both a prima facie case of retaliation and that Safelite Glass' proffered explanation is pretextual under the McDonnell Douglas framework. Therefore, the Court concludes that summary judgment on Wilhite's retaliation claim is not appropriate.

## CONCLUSION

Based upon the foregoing, Safelite Glass' Motion for Summary Judgment, filed June 1, 2005 (doc no. 21), is **GRANTED IN PART** and **DENIED IN PART**.

DATED August 19, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

04-0952p009 (pub).wpd